UNITED STATES BANKRUPTCY COURT                    *FOR PUBLICATION*
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X

In re:

     Gerard and Ariana Iulo,                              Case No. 07-37019
                                                         Chapter 7
         Debtors.

-------------------------------------------------------X

The Cadle Co.,

        Plaintiff,
                                                         Adv. P. No. 08-09008
    -against-

Gerard Iulo,

        Defendant.

-------------------------------------------------------X

Appearances:

Stephen Vlock                          Marian S. Henry
Vlock & Associates, P.C.               Legal Services of the Hudson Valley
230 Park Avenue                        29 N. Hamilton Street
New York, NY 10169                     Poughkeepsie, NY 12601

## MEMORANDUM DECISION
## DENYING PARTIES' MOTIONS FOR SUMMARY JUDGMENT

     The Court considers whether an assignee of a single judgment may except a

debt from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and

523(a)(6); Plaintiff also seeks denial of Defendant's discharge, presumably

pursuant to 11 U.S.C. § 727(a)(3), as Plaintiff alleges that Defendant failed to keep and preserve books and records.[1]  Plaintiff relies primarily on the complaint underlying a years-old default judgment rendered in the Superior Court of Connecticut, District of New Haven, on June 16, 1993 (the "Connecticut Complaint").  Defendant argues that the complaint is insufficient on the grounds that the Connecticut Complaint is not certified, and that the Connecticut Complaint references an agreement different from the one that Plaintiff submits of proof of a fiduciary relationship and fraudulent misrepresentation (defined herein as the "Agreement").  As discussed herein, Plaintiff's motion for summary judgment is denied because of conflicts among its evidence.  A material issue of fact exists regarding whether the Connecticut Complaint incorporated the Agreement; Plaintiff may not rely solely on a default judgment that makes no findings of fact other than that Defendant defaulted years ago in the initial state-court action by failing to answer the Connecticut Complaint.

Defendant's motion for summary judgment is denied, because a material question of fact exists regarding whether Plaintiff's proof substantiates the allegations of fraud in the Connecticut Complaint.  Plaintiff may yet obtain and produce a copy of the Connecticut Complaint in such form as to be admissible at trial.  At the summary judgment stage, the Court is concerned with whether the

---

[1] Title 11 of the United States Code sets forth the Bankruptcy Code.  Hereafter, provisions of this title may be cited as the "Bankruptcy Code."

Complaint and the supporting evidence make a prima facie case for fraud, fraud in a fiduciary capacity, willful and malicious injury, and denial of discharge. At this time, the Court is provided a complaint alleging a set of facts occurring over one time period, and supporting documents spanning a different time period. Limited by its status as an assignee, Plaintiff must show at trial that its evidence proves a single harm, the damage from which may be excepted from discharge.

This is Plaintiff's second motion for summary judgment. In a previous ruling, this Court noted that the Defendant does not dispute his liability for the debt. Adv. P. No. 08-09008, ECF Docket No. 26, 15, 20. Contrary to Plaintiff's suggestion at oral argument, this notation is not the equivalent of this Court's finding that the Defendant is liable for the debt. Even if the Court can be said to have determined liability, which it cannot, liability is not the question on an action to except a debt from discharge pursuant to Bankruptcy Code §§ 523(a)(2)(A) (fraud, false representation or actual fraud), 523(a)(4) (fraud while acting in a fiduciary capacity), and 523(a)(6) (willful and malicious injury). These sections of the Bankruptcy Code raise profound questions of a debtor's state of mind, which are usually determined at trial and are only incidentally concerned with a debtor's liability. Indeed, this Court denied Plaintiff's previous motion for summary judgment on its § 523(a)(6) claim, which contained substantially the same argument as presented by the Plaintiff on the present motion.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a),

28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief

Judge Robert J. Ward dated July 10, 1984.  The determination as to the

dischargeability of a particular debt is a "core proceeding" pursuant to 28 U.S.C. §

157(b)(2)(I).

## BACKGROUND

Defendant and his wife commenced a joint bankruptcy case on December

17, 2007, and the chapter 7 trustee filed a no-asset report on January 18, 2009.

Plaintiff commenced the present adversary proceeding on February 14, 2008.

According to the amended complaint filed on February 5, 2009 (the "Amended

Complaint"), Plaintiff seeks to have a judgment in the amount of $48,610.74

excepted from discharge (the "Judgment").

Plaintiff is the assignee of a default judgment rendered in Connecticut in

favor of American Express Travel related Services Co. Inc. ("Amex"), against

"Milford Industries, Inc., d/b/a Cash A Check," and Defendant.  The Judgment is a

default judgment entered in the Superior Court of Connecticut on June 16, 1993, in

the total amount of $19,685.84, which was entered in the Supreme Court of New

York, Ulster County, on September 14, 2007, in the total amount of $48,610.74.

The Court notes that Plaintiff submits a short decision by the Hon. John Egan of

the Supreme Court of New York, Ulster County, in which the court found that the

Superior Court of Connecticut had personal jurisdiction over the Defendant at the

time it rendered its judgment. *See Plaintiff's Motion for Summary Judgment*, Adv.

P. No. 08-09008, ECF Docket No. 38, Exh. G.[2]  In relevant part, the Ulster County

Supreme Court found that Plaintiff carried its burden to show that the service

address was Plaintiff's usual place of abode, and that Plaintiff failed to demonstrate

that such address was not his usual place of abode.  ECF Docket No. 38, Exh. G, 5.

This Court notes that the Ulster County Supreme Court made no finding that

Defendant had actual knowledge of the action in the Superior Court of

Connecticut.

       According to the Plaintiff, the Judgment is based on an agreement (the

"Agreement") between Milford Industries, d/b/a/ as Cash-A-Check ("Milford") as

Seller and American Express Travel Related Services Co. Inc. ("Amex"), in which

"Amex appoints Seller as its Trustee authorized to sell American Express Personal

Money Orders issued by Amex in accordance with the provisions stated [in the

Agreement]."

       Defendant signed the Agreement as "Chairman of the Board," and dated his

signature "2/13/90."  There is no separate personal guarantee of the debt by

Defendant in favor of Amex.

---

[2] Hereafter, citations to the electronic docket report in the above-captioned adversary proceeding
will be made only to the CM/ECF docket number.

The date of the agreement alleged in the state-court complaint that purportedly establishes a fiduciary relationship is "on or about June 24, 1989." ECF Docket No. 38, Exh. D.  However, the Agreement that Plaintiff submits as establishing a fiduciary relationship was signed by Defendant on February 13, 1990.  ECF Docket No. 38, Exh. A.

Further, the state-court complaint alleges that Defendant committed fraudulent transactions regarding money orders during September 7-14, 1989. ECF Docket No. 38, Exh. D.  However, Plaintiff submits a hefty stack of money orders that it alleges were fraudulently issued by Defendant during July and August of 1991.  ECF Docket No. 38, Exh. B.

The issue presented is whether the Judgment is binding for purposes of collateral estoppel or *res judicata* in an action to except a debt from discharge, where the Judgment represents a default judgment in Connecticut that was entered over Defendant's opposition in New York.  The Court must decide this matter because, more than a decade after the default judgment was first entered, Defendant now argues that the Connecticut Complaint, on which the Judgment was granted, and which has been presented to this Court as fact, was based upon a different agreement than the one upon which Plaintiff relies.

This Court holds that summary judgment on the facts as presented in this case is not proper.  The Court must decide first whether the Judgment, being a

default judgment, bars Defendant from making a substantive defense at this late
date.

## STANDARDS ON MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c) (applicable to this adversary proceeding by
Fed. R. Bankr. P. 7056), summary judgment should be granted to the moving party
if the Court determines that "the pleadings, depositions, answers to interrogatories,
and admissions on file, together with affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to
judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  A movant has the
initial burden of establishing the absence of any genuine issue of material fact. 477
U.S. at 322-23.  Because a grant of summary judgment will deny a party its chance
in court, all inferences must be drawn in the light most favorable to the party
opposing the motion. *Sullivan v. U.S.*, 2007 WL 2811120 (E.D. Pa. 2007 Sept. 26,
2007); *see also Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005).

## ACTIONS TO EXCEPT A DEBT FROM DISCHARGE
## AND OBJECTION TO DISCHARGE, GENERALLY

Consistent with the fresh start policy under the Bankruptcy Code,
"exceptions to discharge must be strictly and literally construed against the creditor
and liberally construed in favor of the honest debtor." *In re Spar*, 176 B.R. 321,
326 (Bankr. S.D.N.Y. 1994) (citation omitted).

The Court incorporates its analysis of Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), and 727(a)(3) as stated on the record of the hearing held on February 17, 2009.  *See* ECF Docket No. 26.  Notably, as stated in Plaintiff's memorandum of law in support of its motion, to prevail on an argument of fraud for purposes of Bankruptcy Code § 523(a)(2), a plaintiff must show by a preponderance of the evidence that debtor made a false misrepresentation; knowing it was false; ***with intent to deceive***; that creditor justifiably relied on the misrepresentation; and that the creditor sustained a loss that was proximately caused by the misrepresentation.

As stated on the record of the hearing held on February 17, 2009, to prevail on an argument of fraud or defalcation in a fiduciary capacity for purposes of Bankruptcy Code § 523(a)(4), a plaintiff must show by a preponderance of the evidence that an express or technical trust existed between the parties, and that the debtor acted with such extreme recklessness so as to exhibit a ***culpable mental state***.  To prevail on an argument of embezzlement for purposes of Bankruptcy Code § 523(a)(4), a plaintiff must show by a preponderance of the evidence that the debtor appropriated property for his or her own use with ***intent to defraud***.

Bankruptcy Code § 523(a)(6) provides that debts inflicted by willful and malicious injury are excepted from discharge; as stated in Plaintiff's memorandum

of law, "willful" means "deliberate ***and intentional***," and "malicious" means "wrongful and without just cause or excuse."

As this Court stated on the record of the hearing held on February 17, 2009, denial of discharge under Bankruptcy Code § 727(a)(3) requires plaintiff to show that the debtor failed to keep the records; if so, then debtor must show that the failure was justified.

## TREATMENT OF DEFAULT JUDGMENTS
## IN ACTIONS FOR NONDISCHARGEABILITY OF A DEBT

28 U.S.C. § 1738 provides that authenticated judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

"The doctrine of *res judicata* bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009).

"Under the doctrine of collateral estoppel, a judgment in a prior proceeding a party from re-litigating an issue if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue

previously litigated was necessary to support a valid and final judgment on the merits." *Martin v. O'Connor*, 1999 U.S. App. LEXIS 11967 (2d Cir. 1999).

Principals of collateral estoppel apply in proceedings to except a debt from discharge pursuant to 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991). "Where the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." *Giaimo v. Detrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003) (pre-petition settlement of a fraud allegation did not prevent action to except debt from discharge). "Where, however, the judgment does not indicate the cause of action on which liability is based, *res judicata* does not apply and a creditor is allowed to prove in a subsequent nondischargeability proceeding that the underlying debt is based in fraud." *Id.* Federal courts refer to the preclusion law of the state in which the judgment was rendered, even if the subsequent proceeding is within the exclusive jurisdiction of the federal court. *Spartz v. Cornell (In re Cornell)*, 178 B.R. 45, 48 (Bankr. D. Conn. 1995) (citing and interpreting *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985)).

In *Spartz v. Cornell (In re Cornell)*, 178 B.R. 45 (Bankr. D. Conn. 1995), the Superior Court of Connecticut entered a default judgment in favor of plaintiff and against the debtor. Subsequently, the debtor commenced a chapter 7 case.

The court set a two-step test to determine the preclusive effect of a state-court judgment: First, the bankruptcy court refers to state law to see whether litigation is barred after a default judgment; second, if it is barred, the bankruptcy court determines if concerns underlying the Bankruptcy Code mandate an exception to 28 U.S.C. § 1738 warranting disregard of the state-court judgment. *Spartz*, 178 B.R. at 48. The bankruptcy court noted that the debtor was aware of the action in the Connecticut Superior Court, and determined that collateral estoppel under Connecticut law applied to give the default judgment preclusive effect.

Therefore, this Court applies the Connecticut law of collateral estoppel to determine whether Plaintiff's default judgment, which it obtained by assignment, may cause the Plaintiff's claim to be excepted from discharge.

In *In re Roberti*, 183 B.R. 991 (Bankr. D. Conn. 1995), the successor-in-interest to a bank sought to except a debt from discharge. The debt was based on a default judgment, rendered in Connecticut state court, in favor of the bank against the debtor; the complaint alleged, among other causes of action, unjust enrichment and fraud. Debtor moved to reopen the case, arguing that he had moved to Florida.

The state court held a hearing and denied debtor's motion.  In describing the motion to reopen, the bankruptcy court described an evidentiary hearing held regarding whether abode service was made, after which the state court denied the debtor's motion to reopen.

Afterward, the debtor filed for bankruptcy, and an adversary proceeding was commenced to except the debt from discharge pursuant to Bankruptcy Code §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4).  The plaintiff alleged that the default judgment was entitled to collateral estoppel effect.  The debtor, as defendant, moved for summary judgment, making substantive arguments about the names and confusion of certain corporate entities.

The court briefly traced the above-referenced cases (*Grogan*, *Spartz*, *Marrese*) to arrive at the rule that the bankruptcy court must apply the law of the state that issued the default judgment.  The court interpreted the holding of *Jackson v. R.G. Whipple, Inc.* 225 Conn. 705 (1993), a decision of the Connecticut Supreme Court: "*Jackson* cannot be read to support the argument that every defendant who was properly served has had a full and fair opportunity to litigate factual issues determined by a subsequent default judgment."  *Roberti*, 183 B.R. at 1002.  The *Roberti* court held, "In the final analysis, a full and fair opportunity to litigate becomes a question of fact under Connecticut law."  *Roberti*, 183 B.R. at 1003.

In *Roberti*, the bankruptcy court drew a distinction between the state court's finding of proper abode service and whether the debtor had actual knowledge that that action. *Roberti*, 183 B.R. at 1003. The bankruptcy court denied both the plaintiff's and the debtor's motions for summary judgment.

Like the defendant in *Roberti*, in the case at bar, Defendant Iulo challenged the personal jurisdiction of the Connecticut Court, and lost in a proceeding in the Ulster County Supreme Court. Like the defendant in *Roberti*, Defendant Iulo failed to persuade the New York court that the address at which he was served in Connecticut was not his "usual place of abode." Like the court in *Roberti*, this Court is not prepared to find that Defendant Iulo had "***actual knowledge*** of the pendency of the state court action and therefore a full and fair opportunity to litigate." *Roberti*, 183 B.R. at 1003. "The absence of that determination is fatal to [plaintiff's] argument that collateral estoppel is applicable." *Id.*

Even if whether Defendant had actual knowledge of the original Connecticut action were not a fact in issue for purposes of Plaintiff's motion for summary judgment, the Court could not give the Judgment might not have preclusive effect, because it does not identify on which count of the Connecticut Complaint it was based, if any. In *Automated Salvage Transport, Co. LLC v. Swirsky (In re Swirsky)*, 372 B.R. 551, 564-565 (Bankr. D. Conn. 2006), the bankruptcy court declined to grant preclusive effect to a default judgment: "[T]he State Court

Complaint alleged seven causes of action. The State Court Decision is ambiguous with respect to whether any count of the State Court Complaint other than the First Count was necessary to the Judgment." *Automated Salvage Transport*, 372 B.R. at 564-565.  In *Automated Salvage Transport*, the plaintiff obtained a default pre-petition judgment against the debtor in the Connecticut state court, alleging seven counts including among others breach of fiduciary duty and duty of loyalty, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  A default judgment was rendered in the state-court action, which specifically referenced only one count, breach of a restrictive covenant.  The bankruptcy court held a limited trial and determined that the debtor had a full and fair opportunity to litigate the state court action.

The bankruptcy court went on to deny the plaintiff's and the debtor's motions for summary judgment, noting the rule, "Where there is more than one possible reason for a judgment, and the court cannot say that any one is necessarily inherent in the judgment, the doctrine of collateral estoppel is inapplicable." *Automated Salvage Transport*, 372 B.R. at 565 (quoting *Dowling v. Finley Assocs. Inc.*, 248 Conn 364 (Conn. 1999).  The bankruptcy court held, "Because it is not clear that any count other than the First Count is necessarily inherent in the judgment, the court cannot conclude that either the Fiduciary Duty Issue or the Intent Issue were necessarily decided in the State Court Action." *Automated*

14

*Salvage Transport*, 372 B.R. at 565. The bankruptcy court further noted that issues

of intent are more appropriately decided at trial than on motions for summary

judgment. *See id.*[3]

Similarly, in *H.J. Bushka Lumber and Millwork v. Boucher (In re Boucher)*,

336 B.R. 27 (Bankr. D. Conn. 2005), in which plaintiff creditors sought to except a

debt from discharge pursuant to Bankruptcy Code § 523(a)(2)(A). Defendant

failed to make any appearance in the adversary proceeding. The plaintiffs had

obtained a default judgment in Connecticut state court, in which they had alleged,

among other causes of action, breach of contract, unjust enrichment, and fraud.

Plaintiffs argued that, under the doctrine of collateral estoppel, the state-court

judgment was conclusive of fraud.

The bankruptcy court found against the plaintiffs: "Because [plaintiff] has

failed to offer any evidence that the claim of fraud in the State Court Complaint

was necessary to the Judgment, the court concludes that the Judgment does not

have preclusive effect on the Fraud Issue in this adversary proceeding." *Boucher*,

336 B.R. at 34.

In the case at bar, the Judgment notes that Milford and Defendant were

defaulted for failure to appear, and were duly served. As noted above, pursuant to

---

[3] Plaintiff argues that by failing to answer the Complaint, Defendant admitted all of the
allegations of the complaint. This reasoning was rejected by the court in *Automated Salvage
Transport*. *See Automated Salvage Transport, Co. LLC v. Swirsky (In re Swirsky)*, 372 B.R. at
564 n.20.

*Roberti*, proof of service alone will not sustain a default judgment in an action to

except a debt from discharge.  Further, the Judgment states:

> The Court, having examined the plaintiff's affidavit of debt, finds it has sustained damages as alleged in the complaint in the amount of $19,471.64.
> Whereupon it is adjudged that the plaintiff recover of the defendants the sum of $19,471.64 damages plus costs in the amount of $214.20.

ECF Docket No. 38, Exh. E.  The state court complaint alleged various causes of

action against both Milford and Defendant Iulo.  In the Judgment, the state court

made no finding that Iulo had committed fraud.  Indeed, Amex stated a cause of

action against Milford for breach of contract.  As in *Boucher*, the Connecticut

judgment does not specify on what count the judgment was rendered.  The Court

follows Connecticut law as set forth in *Automated Salvage Transport* and finds that

it cannot determine what count, if any, of the state-court complaint was the basis of

the Judgment – all it does is find that both defendants defaulted in appearing.

Therefore, nothing in the State Court Action was actually and necessarily litigated

and decided.  Therefore, litigation of Defendant's alleged fraud in the bankruptcy

court is not precluded by collateral estoppel.

This Court finds that there is a material issue of fact as to whether Defendant

had actual knowledge of the initial Connecticut lawsuit; therefore, Plaintiff's

motion for summary judgment is denied.  Because there is a material issue of fact

that precludes the function of collateral estoppel, the Court cannot treat the allegations in the Connecticut complaint as admissions by the Defendant.

Additionally, the Court finds that there is a material issue of fact as to whether the complaint in that action was actually based on the Agreement; therefore, Defendant's motion for summary judgment is denied. As noted above, the date of the agreement alleged Connecticut Complaint that purportedly establishes a fiduciary relationship is "on or about June 24, 1989." However, the agreement that Plaintiff submits as establishing a fiduciary relationship was signed by Defendant on February 13, 1990. Further, the state-court complaint alleges that Defendant committed fraudulent transactions regarding money orders during September 7-14, 1989. However, Plaintiff submits a hefty stack of money orders that were allegedly fraudulently issued by Defendant during July and August of 1991. Plaintiff must present the agreement and money orders on which the Connecticut Complaint was based in order to establish the relationship, representations and intent that are required for the relief it seeks.

At oral argument, counsel to Defendant cited for the first time *Taub v. Morris (In re Morris)*, Bankr. S.D.N.Y. 2000, in which Chief Judge Bernstein denied a motion to vacate a judgment. In presenting *Taub*, counsel to Defendant sought summary judgment on the ground that Plaintiff failed to produce a certified copy of the complaint on which the Judgment was based, including the agreement

17

which was annexed as an exhibit and made part of the complaint.  In *Taub*,

plaintiff was the assignee of a default judgment, and failed to produce at trial a

certified copy of the complaint on which the default judgment was based.  The

Court notes that, even after a trial and judgment entered, the court in *Taub* refused

to rely solely on the evidentiary deficiency of the uncertified complaint.  Instead,

having noted the failure to produce a certified copy of the complaint at trial, the

bankruptcy court went on to undertake a comprehensive review of the law of

collateral estoppel of the state from which the judgment was rendered, and found

that the complaint failed to make an adequate showing of *scienter*. As a finding of

fraud for purposes of nondischargeability requires actual knowledge, the complaint

was found to be insufficient to prove a fraud claim in bankruptcy court.

While *Taub* will be of guidance to the Court should Plaintiff fail to produce

a certified copy of the Complaint at trial, at this time the Court considers a motion

for summary judgment.  At this stage of litigation, the Court will not rest on

whether the Connecticut Complaint is certified. *Celotex* has been interpreted to

mean that inadmissible evidence may be considered at the summary judgment

stage if it may be easily made admissible at trial.  *See Rosensaft v. Ashton Tech.*

*Group, Inc.*, 1997 U.S. Dist. LEXIS 19216 at \***7-**\*8 (S.D.N.Y. Dec. 4, 1997)

(evidence was rejected not for form but because it was inadmissible hearsay; "[The

*Celotex* exception] refers only to evidence that, while in an inadmissible form at

the summary judgment stage, can easily be rendered admissible at the trial stage"). In the case at bar, Plaintiff may yet produce at trial a certified copy of the Complaint.

The Court notes that Defendant's motion for summary judgment on Plaintiff's claim under Bankruptcy Code § 727(a)(3) (denial of discharge) depends in large part on whether the agreement signed by Defendant on February 13, 1990, formed the basis of the Connecticut Complaint, on which the Judgment is based. Whether Defendant was under an obligation to keep records is a question of fact to be determined at trial; at that time, Defendant will have an opportunity to show that the failure to keep the records was justified for purposes of § 727(a)(3). Therefore, the Court denies summary judgment on this point.

At oral argument, counsel to Plaintiff asserted that Plaintiff had produced an agreement establishing a fiduciary relationship with Plaintiff's predecessor in interest, and that therefore Plaintiff could pursue a claim of fraud that might have been asserted by Amex. The Court rejects this argument. Plaintiff came by its rights by assignment of a single judgment dated June 16, 1993. Plaintiff is not Amex's general successor in interest, but instead is the assignee of a single judgment. Plaintiff was not assigned any claim that Amex might have asserted against Defendant, but was instead assigned a single judgment. Amex assigned is "right, title and interest in, to and under [the Judgment]" to Financial Support

Service – E, which subsequently assigned its "right, title and interest in [the Judgment]" to Plaintiff.  ECF Docket No. 38, Exh. F.  Plaintiff is limited to the rights attached to the Judgment.  If Plaintiff cannot prove that the Agreement and the money orders are the basis of the complaint that supports the Judgment, then Plaintiff will not prevail at trial.  Plaintiff has not shown any right or standing to present evidence of a separate fraud committed subsequent to the events alleged in the Connecticut Complaint, if the subsequent fraud was not alleged in the Connecticut Complaint as the fraud for which Amex sought its remedies.  Plaintiff is limited to the relationships, acts and events alleged in the complaint that lead to the Judgment.  *See State of Cal. Public Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427 (N.Y. 2000) (assignment referred only to rights under loan documents, not overall loan transaction).

At trial, the Plaintiff will have to show, among many other things, that the Judgment was based on an agreement that establishes a fiduciary duty, and that such agreement was entered with intent to deceive.  A fiduciary duty and intent to deceive are just two elements that are required under the causes of action that Plaintiff asserts in its effort to except this debt from discharge.

## **CONCLUSION**

Upon the foregoing, the Court denies the Plaintiff's and Defendant's motions for summary judgment, because questions of material fact are presented

regarding whether the complaint upon which the Judgment is based is supported by Plaintiff's proof, namely the agreement signed by Defendant on February 13, 1990, and the photocopies of money orders submitted with Plaintiff's motion for summary judgment.  Where all that has been established is that abode service of a complaint was established, the Court cannot give the Judgment (or the Connecticut Complaint) preclusive effect, pursuant to Connecticut law.  Even if Defendant's actual knowledge of the Connecticut action were not a material fact in issue, the Court cannot give the Judgment preclusive effect because the Judgment does not identify on which count of the Connecticut Complaint the Judgment was based, if any.  The Court must ascertain whether the Connecticut Complaint was based on a heretofore-undisclosed agreement, or whether the dates in the complaint were typographical errors, which Defendant spurns as Plaintiff's defense.  Questions of fact remain regarding Defendant's relationship with Amex and Defendant's intent with regard to the acts Plaintiff asserts were wrongful, and cannot be determined without the correct agreement.

Each party shall submit orders denying its own motion for summary judgment; and the parties shall enter a final scheduling order to govern the trial, with further conference to be held at 11:30 a.m. on February 2, 2010.

Dated:         Poughkeepsie, New York
               December 4, 2009

                                    /s/ Cecelia Morris
                                    U.S. Bankruptcy Judge